**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **AEONS CENTRO DE** | : | |
| **ADMINISTRACAO DE** | | |
| **EMPRESAS, LTD.,** | : | |
| | | |
| **Plaintiff,** | : | |
| | | **CIVIL NO.: BEL-11-3447** |
| | : | |
| **v.** | | |
| | : | |
| **CENTRAL BANK OF NIGERIA,** | | |
| | : | |
| **Defendant.** | | |
| | …o0o… | |

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the timely Motion to Vacate the Confessed Judgment and to Dismiss the Complaint, ECF No. 13, that Defendant Central Bank of Nigeria ("CBN") filed; the Opposition thereto, ECF No. 24, that Plaintiff Aeons Centro de Administração de Empresas, Ltd. ("Aeons") filed; and Defendant's Reply, ECF No. 26.  On June 1, 2012, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Legg referred this case to me to provide a Report and Recommendation on Defendant's Motion to Vacate the Confessed Judgment and to Dismiss the Complaint.  ECF No. 25.  Having reviewed the filings, I find that a hearing is not necessary.  *See* Loc. R. 105.6.  For the reasons stated herein, I recommend that, following the time to object to this Report and Recommendation, Defendant's Motion to Vacate the Confessed Judgment be GRANTED, the case be REOPENED, and Defendant's Motion to Dismiss the Complaint be GRANTED.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a Complaint for Confessed Judgment on November 30, 2011, claiming that the parties signed a Payment Guarantee and Settlement Agreement ("Payment Guarantee" or "Guar.") that authorized a confessed judgment. Compl. ¶ 1, ECF No. 1.   In the Complaint, Plaintiff claimed that it "is a Portuguese corporation to whom monies are owed for past work performed," specifically the staggeringly large sum of $181,817,894.74, plus $8,000.00 in attorney's fees, and CBN "is an agent or instrumentality of the Federal Republic of Nigeria, and is the GUARANTOR of the debt owed by the [Nigerian] GOVERNMENT to AEONS." *Id.* ¶¶ 2 & 7.   Aeons alleged that it provided "advances" to CBN in excess of $1 million and "formally demanded payment from GUARANTOR in accordance with the terms of the PAYMENT GUARANTEE," but "AEONS has received no payment . . . ." *Id.* ¶ 8(a)–(b).   Plaintiff asserted that this Court has jurisdiction and that venue is proper. *Id.* ¶¶ 3–4.

To its Complaint, Plaintiff attached the Payment Guarantee, ECF No. 1-1, and the Affidavit of Owen Rice, Plaintiff's Attorney-in-Fact, though not at law, Rice Aff. ¶ 3, ECF No. 1-5.   The Payment Guarantee states that, after AEONS pays $74,530.00 for "missing documents," CBN "promises and agrees to pay AEONS by Telegraphic Transfer" a "principal amount" plus interest, by June 30, 2008, "to AEONS' account designated." Guar. 1 & 3. Additionally, it provides that it will "be governed, construed, interpreted and applied in accordance with the laws of Maryland," and that, if the parties failed "to agree in respect to any matter arising under this PAYMENT GUARANTEE, the GUARANTOR and AEONS agree to submit to the jurisdiction of the United States District Court in and for Maryland and to have the dispute settled by that court." *Id.* at 4.   It provides that CBN

> expressly agrees that the United States District Court in and for Maryland may
> enter a Judgment by Confession upon the filing of a complaint, the 'legalized'

> original or a photocopy of this PAYMENT GUARANTEE AND SETTLEMENT
> AGREEMENT (as amended) and an affidavit specifying the Amount due, and the
> address specified below in Notices to GOVERNMENT and to GUARANTOR.

*Id.* at 2.  In the Affidavit, Mr. Rice described in detail the circumstances under which Defendant

allegedly executed the Payment Guarantee.  Rice Aff. ¶¶ 5–12.  He stated that, as of November

19, 2011, $181,817,894.74 was due under the written instrument.   Rice Aff. ¶ 9 & Ex. 6, ECF

No. 1-11.

Judge Legg referred the matter to me pursuant to Loc. R. 301.6.ak.  ECF No. 3.  After

reviewing the Complaint, Affidavit, Exhibits, and Aeons's supplemental filing, I found that they

substantively met the requirements of Local Rule 108.1.a; that the documents made a prima facie

showing that Defendant, through its representatives, voluntarily, knowingly, and intelligently

waived its right to notice and a prejudgment hearing; and that Plaintiff's claim for liquidated

damages against Defendant was meritorious.  *See* Loc. R. 108.1.b.  Therefore, I ordered the

Clerk of the Court to enter the Confessed Judgment and ensure that notice of the entry was

provided to Defendant.  Implicit in this order was the Court's assumption that the documents

filed by Aeons were genuine and authentic, not fraudulent as CBN now contends.

After receiving that notice, Defendant filed the pending motion.  Defendant alleges that

Plaintiff's Complaint for Confessed Judgment "arises from an unfortunately typical Advance Fee

Fraud or '419'[1] scam," in which a party (in this case, Plaintiff) is asked to send money to the

scammer (in this case, an undisclosed party posing as the Nigerian government), in exchange for

which the scammer promises to send the party significantly more money.  Def.'s Mem.

Supporting CBN's Mot. to Vacate the Confessed Jmt. & to Dismiss Compl. 2–4 ("Def.'s

---

[1] A "Nigerian 419 scam" is "a type of advance fee fraud and one of the most common types of
confidence frauds in which the victim is defrauded for monetary gain. . . . The number '419'
refers to the article of the Nigerian Criminal Code dealing with fraud." *Nigerian Scam*,
Wikipedia, http://en.wikipedia.org/wiki/Nigerian_scam (last visited July 3, 2012).

Mem."), ECF No. 13-1.  Defendant argues that the Court should vacate the Confessed Judgment because documents that Plaintiff presented to the Court in support of its Complaint, including the Payment Guarantee, "are forgeries and frauds."  *Id.* at 1 & 7.   Alternatively, CBN argues that the Court lacks both subject matter and personal jurisdiction, such that it should vacate the Confessed Judgment and dismiss the lawsuit.  *Id.* at 13, 16–17, & 21.  In addition, it contends that the Court should dismiss the case for *forum non conveniens*.  *Id.* at 19.

Plaintiff responded at length (Plaintiff's Opposition and attachments, ironically, total 419 pages), arguing for the validity of its contracts with the Nigerian government.  Pl.'s Opp'n ¶¶ 11–26.  Insisting that "[t]he monies are in fact owed to AEONS," Plaintiff contends

> [T]his is not a typical 419 scam, AEONS was not contacted out of the blue and asked to participate in helping someone remove money from Nigeria, but rather, AEONS was simply attempting to collect its funds and was responding to those persons who were acting on behalf of the Government of Nigeria.

*Id.* ¶ 26.  Plaintiff claims that "[t]he contract work for which AEONS has not been paid was one of the contracts awarded by the last Military Administration of [the Nigerian] GOVERNMENT." *Id.* ¶ 17.  Plaintiff maintains that "competent solicitors and barristers" of "[the Nigerian] GOVERNMENT and CBN . . . are the ones who drafted, prepared for execution, oversaw the execution of the informal agreements and formal instruments, and delivered the written undertakings to AEONS."  *Id.* ¶ 11.  Plaintiff argues that the debt must be "legitimate" because "AEONS delivered Notices of Default and Demands for Payment to the Ministry of Finance, the Ministry of Justice and the CBN more than twenty times: sometimes by facsimile, sometimes by email, and a few times by commercial courier," and "the Nigerian GOVERNMENT . . . failed to respond to over 20 demands for payment."  *Id.* ¶ 13.  In Plaintiff's view, the Court should question the veracity of Defendant's affidavits, not Plaintiff's documents.  *Id.* ¶ 29.

Plaintiff submitted an affidavit from Helder de Moraes e Castro Pina, "the founder, controlling shareholder and the person who has been and presently is responsible for the operations of Aeons."  Pina Aff. ¶ 1, ECF No. 24-2.  Mr. Pina stated that Aeons entered into a contract with the Nigerian government on July 26, 1999, *id.* ¶ 5, and he described Aeons's ongoing correspondence with Nigerian officials and their delegates in an attempt to collect the amount due under the contract, *id.* ¶¶ 7–109.  Mr. Pina declared that the attempts to secure payment resulted in "the Settlement Agreement with the title PAYMENT GUARANTEE AND SETTLEMENT AGREEMENT with an EFFECTIVE DATE of May 9, 2008," which was "drafted, printed on watermarked stationery, and signed by the signatories in Nigeria," and then "presented to AEONS as a properly executed, authenticated and issued document for AEONS to accept."  *Id.* ¶ 110.  The affidavit's supporting documents included various documents purporting to be from the Nigerian government, affirming that Plaintiff had a contract with the Nigerian government for "SUPPLY, COMMISSIONING OF 250.000 MONX TURBINE POLYPROPELENE PLANTS AND 150,000 BFSD FOR WARRI REFINERY" and "PIPELINE RECONSTRUCTION AND COMPUTER OPTIMIZATION FOR PLANTS 'A' to 'D' AT PORT-HARCOURT REFINERY" for US$42,560,000.00; that "the contract has been completed"; and that Plaintiff "is entitled to his Contract Payment."  Pina Aff. Ex. 3, ECF No. 24-5; *see also, e.g.*, Pina Aff. Ex. 4–6, 8, 29, ECF No. 24-6 – 24-8, 24-10, 24-31.  Notably, the documents did not include the original contract.

## II.     MOTION TO VACATE THE CONFESSED JUDGMENT

Local Rule 108.1(e) governs determination of a motion to vacate a confessed judgment. It provides, in part:

> If the evidence presented establishes that there are substantial and sufficient
> grounds for an actual controversy as to the merits of the case, the Court shall

> order the judgment by confession vacated, opened, or modified, with leave to the
> defendant to file a pleading, and the case shall stand for trial. If the evidence does
> not establish that there are substantial and sufficient grounds for actual
> controversy as to the merits of the case, the judgment shall stand to the same
> extent as a final judgment.

Put another way, the issue is whether the motion "rais[es] a genuine issue of material fact sufficient to constitute a meritorious defense to the confessed judgment." *Signet Bank/Md. v. Wellington*, 968 F.2d 1212 (Table), 1992 WL 157429, at *1 (1992); *Steamship Trade Ass'n of Balt., Inc .v. Peters*, No. WDQ-09-109, 2009 WL 2924810, at *2 (D. Md. Sept. 9, 2009) (quoting *Signet Bank*). "[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party," or, in this case, the defendant. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). However, "[t]he 'mere assertion of a defense is insufficient to satisfy the burden of proof necessary to vacate a confessed judgment.'" *Steamship*, 2009 WL 2924810, at *2 (quoting *Leasing & Fin., Inc. v. IPM Tech., Inc.*, 885 F.2d 188, 194 (4th Cir. 1989)).

The Rules of Procedure governing confessed judgments in Maryland state courts "are analogous to this Court's procedures with respect to confessed judgments." *Sager v. Hous. Comm'n*, No. ELH-11-2631, 2012 WL 1233016, at *19 n.37 (D. Md. Apr. 11, 2012). Notably,

> "'[j]udgments by confession are not favored in Maryland, because Maryland
> courts have long recognized that the practice of including in a promissory note a
> provision authorizing confession of judgment lends itself far too readily to fraud
> and abuse.'" *Gambo v. Bank of Md.*, 102 Md. App. 166, 185, 648 A.2d 1105,
> 1114 (1994) (citation omitted). Therefore, the Maryland Court of Appeals "has
> made clear that judgments by confession are to be 'freely stricken out on motion
> to let in defenses.'" *Schlossberg* [*v. Citizens Bank*, 672 A.2d 625, 627 (Md.
> 1996)] (citation and some internal quotation marks omitted). The disfavored
> status of confessed judgments is also made plain by the many provisions of
> Maryland law . . . that prohibit the use of confessed judgment clauses in a wide
> variety of contractual contexts.

*Id.* at *20.

Defendant argues that the Court should vacate the Confessed Judgment because the documents that Plaintiff submitted with its Complaint as documents it allegedly received from the Nigerian government, and as grounds for it to recover the sum sought in the Complaint, "are forgeries and frauds."  Def.'s Mem. 1, 7.  Defendant submitted affidavits from Simon Onekuto, a Nigerian lawyer who is "the Director in charge of the Legal Department of the Central Bank of Nigeria," *id.* Ex. C, ECF No. 13-4; Abdullahi Ahmed Yola, the "Solicitor-General of the Federation [of Nigeria] and Permanent Secretary of the Federal Ministry of Justice," *id.* Ex. D, ECF No. 13-5; Danladi Kifasi, the "Permanent secretary of the Ministry of Finance," who is "the chief bureaucrat in the Ministry," *id.* Ex. E, ECF No. 13-6; and Drs. Ngozi Okonjo-Iweala and Shamsudeen Usman, Ministers of Finance, *id.* Ex. F–G, ECF Nos. 13-7 – 13-8.  Mr. Onekuto declared that Plaintiff entered into a "scam" of "fraudulent activity" that did not "benefit[] the CBN or the Nigerian Government" and was not "pursued by any agents of the CBN acting on behalf of CBN or the Nigerian Government." Onekuto Aff. ¶ 7.  He insisted that "[n]o person committing such fraudulent activity would be acting within the scope of his authority as an agent of the CBN or the Nigerian Government."  *Id.*  In support of his assertion that "each of the exhibits attached to plaintiff's Complaint . . . . are forgeries and were not authorized by CBN or the Nigerian Government," *id.* ¶ 8, Mr. Onekuto noted various inaccuracies that he found in Plaintiff's exhibits and inconsistences that he noticed among the exhibits and actual Nigerian documents, *id.* ¶¶ 9–12.  Similarly, Mr. Yola and Mr. Kifasi stated that Plaintiff's documents are fraudulent and forgeries, noting various indicators of fraud.  Yola Aff. ¶¶ 4–7; Kifasi Aff. ¶¶ 4–13.  Dr. Okonjo-Iweala insisted that he "never conducted any negotiation with the plaintiff," nor "caused the Nigerian government to issue any documents whatsoever to the plaintiff," and that

the June 12, 2005 Statutory Guarantee with his signature on it, Rice Aff. Ex. 4, ECF No. 1-9, "is

forged." Okonjo-Iweala Aff. ¶¶ 3–4. Dr. Usman declared that the documents Plaintiff submitted

"that claim to bear [his] signature . . . . are all forgeries." Usman Aff. ¶ 6.

As noted, Plaintiff provided various documents in response to show that its negotiations

and the Payment Guarantee were legitimate. Plaintiff challenges the veracity of Defendant's

affidavits, alleging that "the affidavit of Abdullah Ahmed Yola, which states under oath that

AEONS is not owed money by the Nigerian government, is at least, in that respect, patently

untrue," and "the affidavit of Danladi Kifasi . . . states that the Nigerian Government had no

relationship with a bank, Sabadell Atlantico," but that also appears inaccurate because "another

contractor confirmed payment by the Nigerian government through Sabadell Atlantico." Pl.'s

Opp'n ¶ 29. According to Plaintiff, "[a]dditional time is required to fully investigate and resolve

the multiple issues of credibility that arise by virtue of the divergent positions taken by the

parties with respect to the issues of the existence of debt, execution of documents, identities of

persons and attempts at collection."[2] *Id.* ¶ 24. Alternatively, stating that "[t]he level of

government corruption in Nigeria is well known," *id.* ¶ 2, Plaintiff argues that even if the

documents AEONS has were not signed by the officials whose names appear on them or in

accordance with the Nigerian government's wishes, they are enforceable nonetheless under two

theories. First, Plaintiff argues that "the signature [may have been] appended on [the official's]

behalf by another government employee, acting with actual or apparent authority." *Id.* ¶ 29.

Second, Plaintiff contends that the Nigerian government and CBN cannot "evade liability for

promises made by employees and relied upon by AEONS . . . who in good faith contracts with

the Federal Republic of Nigeria." *Id.* ¶ 2.

---

[2] The Court already granted Plaintiff's motion for a sixty-day extension of its deadline for filing
its Opposition. ECF No. 19.

If the documents Plaintiff submitted in support of its Complaint are fraudulent and forgeries, a position that Defendant supports with substantial evidence, then not only did CBN not enter into a contract under which it now owes Aeons a considerable sum of money, but it also did not agree to a confessed judgment. Thus, through this evidence, Defendant without question "rais[es] a genuine issue of material fact sufficient to constitute a meritorious defense," under which Defendant would not be obligated to Plaintiff. *See Signet Bank/Md. v. Wellington*, 968 F.2d 1212 (Table), 1992 WL 157429, at *1 (1992). Although Plaintiff contests Defendant's assertions, Plaintiff's own evidence to the contrary convincingly shows that "there are substantial and sufficient grounds for an actual controversy as to the merits of the case," Loc. R. 108.1(e), as the parties dispute the validity of the documents on which the controversy is based. Moreover, it is not for this Court at this time to determine whether Defendant's evidence is authentic. Rather, it is a question of whether "*if believed*, [the evidence presented] would permit either the Court or the jury to find for [Defendant]." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) (emphasis added). If the fact-finder believed Defendant's evidence over Plaintiff's, the fact-finder would have to reach the conclusion that the documents were fraudulent and forgeries and it would find for Defendant. Therefore, I recommend that the Court vacate the Confessed Judgment on that ground and reopen the case. *See id.*; Loc. R. 108.1(e).

## III.   MOTION TO DISMISS

Defendant also argues for dismissal under the doctrine of *forum non conveniens*[3] because "this dispute – involving alleged Nigerian documents, Nigerian witnesses, and ultimately, sovereign obligations of Nigeria – is a dispute properly brought in Nigeria (and not in Maryland, which has no connection . . . to the dispute)." Def.'s Mem. 19. Plaintiff does not address this

---

[3] The other grounds that Defendant asserts for vacating the Confessed Judgment and dismissing the Complaint are discussed *infra*, in Part IV.

argument.

The common-law doctrine of *forum non conveniens* provides federal courts with "discretion to dismiss a case 'when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,'" provided that "'the alternative forum is abroad'" or, rarely, a state or territorial court. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–48 (1994) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)))); *Poe v. Marquette Cement Mfg. Co.*, 376 F. Supp. 1054, 1060 (D. Md. 1974). When the case is more conveniently tried in another U.S. district court, then the court transfers, rather than dismisses, the case under 28 U.S.C. § 1404(a), which codified the doctrine insofar as it applies to alternative domestic fora. *Sinochem*, 549 U.S. at 430. Here, the alternative forum is Nigeria, a foreign country. *See* Def.'s Mem. 19. Therefore, the common-law doctrine of *forum non conveniens*, not 28 U.S.C. § 1404(a), governs. *See Sinochem*, 549 U.S. at 429.

A court may dismiss under the common-law doctrine even if the court has jurisdiction and the venue is proper, *Am. Dredging Co.*, 510 U.S. at 448, although the court need not establish either subject matter or personal jurisdiction prior to dismissing for *forum non conveniens*, *Sinochem*, 549 U.S. at 425. Such a dismissal "reflects a court's assessment of a 'range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'" *Sinochem*, 549 U.S. at 429 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996)) (citations omitted). Typically, when a defendant moves to dismiss under *forum non conveniens*, the defendant "bears

a heavy burden in opposing the plaintiff's chosen forum." *Id.* at 430.  However, when the plaintiff has not chosen its home forum, "the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'"  *Id.* (quoting *Piper Aircraft Co.*, 454 U.S. at 255–56); *see Poe*, 376 F. Supp. at 1060 ("When the doctrine is invoked on a motion to dismiss, it is subject to careful limitation and applied only in exceptional cases.  Unless the balance is strongly in favor of the defendant, the forum chosen by the plaintiff should not be disturbed.") (citations omitted).

Without a doubt, this is the "exceptional case[]."  *See Poe*, 376 F. Supp. at 1060. Plaintiff chose to bring suit in the United States District Court for the District of Maryland, which is not its home forum.  Plaintiff, now a dissolved entity, was organized as a corporation in Portugal under Portuguese law. *See* Def.'s Mem. 1; Pl.'s Opp'n 1 & ¶ 21; Pina Aff. ¶ 2. According to its "founder, controlling shareholder and the person . . . responsible for [its] operations," Mr. Pina, Plaintiff "maintains a principal office at Rua Eduardo Augusto Pedroso, No. 18-C in Alge, Lisbon, Portugal."  Pina Aff. ¶ 1–2.  Additionally, the Portuguese documents attached to the legal opinion that Plaintiff submitted from its counsel provide addresses for Aeons in Portugal.  Pina Aff. Ex. 1 at 6 & 7.  Also, Mr. Pina is a Portuguese citizen who has "resided in Lisbon," Portugal, since he was approximately twenty-three years old.  Pina Aff. ¶ 1. Moreover, the Payment Guarantee and other documents on which Plaintiff relies are Nigerian; the signers of those documents appear to be in Nigeria; and the individuals whom Plaintiff alleges participated in negotiations on behalf of CBN appear to be in Nigeria.  *See* Guar. 1 & 5; Rice Aff. 2 nn. 1–7 & Ex. 2, 4, 9, & 22, ECF Nos. 1-7, 1-9, 1-14, & 1-27; Pina Aff. Ex. 3, 4, 8, 9, 11, & 28, ECF Nos. 24-5, 24-6, 24-10, 24-11, 24-13, & 24-30.  These individuals are likely to be critical witnesses for Plaintiff at an evidentiary hearing or trial, yet they will have to travel from

Nigeria to appear before this Court. Additionally, those who are not officers of CBN are beyond the subpoena power of this Court. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii) (stating that, on motion, the court must quash or modify a subpoena that "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person"). Therefore, it cannot seriously be disputed that this Court is not a convenient forum for Plaintiff, its representative, or its likely witnesses.

This Court is an equally-inconvenient forum for Defendant, which is an instrumentality of the Nigerian government, which, self-evidently, is located in Nigeria. The individuals who have provided affidavits for Defendant, likely the same individuals who would be called by Defendant to testify at an evidentiary hearing or trial, appear to be in Nigeria and would have to travel a great distance to appear before this Court. Def.'s Mem. Ex. C–G. Some of them may be beyond the subpoena power of this Court. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii).

Nigeria should have jurisdiction over this case because the incident arose in Nigeria and Defendant is Nigerian. *See Sinochem*, 549 U.S. at 429. Nigeria would be the more convenient forum for Defendant because its representatives and likely witnesses are in Nigeria. Although, pursuant to the terms of the Payment Agreement, the Nigerian court would have to construe and apply Maryland law, it would have the advantage of familiarity with Nigerian documents and government officials. Indeed, Nigeria also would be a more convenient forum for Plaintiff because a number of its likely witnesses would be in the country, and the Nigerian courts would have a greater familiarity than this Court with Nigerian documents for the purpose of assessing their authenticity. Thus, "trial in the chosen forum" would provide little, if any, convenience to Plaintiff," and the "oppressiveness and vexation" to Defendant of proceedings in this Court would be great. *Sinochem*, 549 U.S. at 429. Consequently, applying the test stated in *Sinochem*,

549 U.S. at 429, the "oppressiveness and vexation" to Defendant" is "out of all proportion to plaintiff's convenience." *Id.* Having considered "the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality," *id.*, I recommend that the Court dismiss this lawsuit for *forum non conveniens*.

## IV.   ALTERNATIVE GROUNDS

As alternative grounds for vacating the confessed judgment, and as grounds for dismissing the lawsuit, Defendant argues that subject matter jurisdiction is lacking in two[4] respects: (1) because "CBN is an agency or instrumentality of the defendant Republic of Nigeria, as defined in 28 U.S.C. 1603(b) and is entitled to immunity" under the Foreign Sovereign Immunities Act ("FSIA" or "Act"), Def.'s Mem. 13; and (2) because "Aeons has no standing to bring this suit,"[5] *id.* at 21; and that the Court also lacks personal jurisdiction, *id.* at 16–17.  In its Complaint, Plaintiff conceded that "[t]he Central Bank of Nigeria (GUARANTOR) is an agent or instrumentality of the Federal Republic of Nigeria, a foreign government."  Compl. 2.

---

[4] Defendant also argues that "Maryland's three (3) year statute of limitations . . . bars this suit," Def.'s Reply 12 (capitalization removed), which can be seen as another challenge to the Court's subject matter jurisdiction.  *See* Wright & Miller, 5B *Fed. Prac. & Proc.* § 1350, at 96 ("Courts have recognized a variety of . . . defenses that one normally would not think of as raising subject matter jurisdiction questions when considering a Rule 12(b)(1) motion, including claims that the plaintiff's suit is barred by the governing statute of limitations . . . .").  However, "[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered," because the argument's late appearance leaves the opposing party without the opportunity to respond.  *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734–35 (D. Md. 2006) (citing *United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006)).  Because the Confessed Judgment should be vacated on the basis that the documents may be fraudulent and forgeries, and the suit should be dismissed under the doctrine of *forum non conveniens*, there is no need for the Court to exercise its discretion to consider whether the statute of limitations ran before this suit commenced.  *See id.*

[5] Although Defendant does not state explicitly that this is a jurisdictional argument, "standing represents a jurisdictional requirement which remains open to review at all stages of the litigation," *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 255 (1994), and the "issue of standing [may be] asserted as a basis for lack of subject matter jurisdiction under Rule 12(b)(1)," *Trinity Outdoor, L.L.C. v. City of Rockville*, 123 Fed. App'x 101, 105 (4th Cir. 2005).

Nonetheless, citing 28 U.S.C. § 1605(a)(1), which provides that "[a] foreign states shall not be immune from the jurisdiction of the courts of the United States . . . in any case . . . in which the foreign state has waived its immunity either explicitly or by implication," Plaintiff alleged that CBN "waived any claim of immunity" by "stipulat[ing] [in the Payment Guarantee] that any dispute is to be resolved by this Court under the laws of the State of Maryland." *Id.* Additionally, Plaintiff attached the Payment Guarantee, which provided that CBN agreed "to submit to the jurisdiction of the United States District Court in and for Maryland and to have the dispute settled by that court." Compl. Ex. 1 at 4.

However, Plaintiff's response is too clever by half, as the document it relies on to establish its forum selection argument is one of those that Defendant contends is fraudulent and forged. If valid, this document arguably confers subject matter jurisdiction, yet its validity cannot be established without an evidentiary hearing. *See Equal Rights Ctr. v. AvalonBay Communities, Inc.*, No. AW-05-2626, 2009 WL 1153397, at *2 (D. Md. March 23, 2009) (If the defendant "contend[s] that the jurisdictional allegations in the complaint are not true" in its Rule 12(b)(1) motion to dismiss, then "the Court may conduct an evidentiary hearing and consider matters beyond the allegations in the complaint."). However, the majority of the necessary witnesses are abroad, and travel to the hearing would be costly and burdensome. Additionally, some may be beyond the subpoena power of this Court. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii). Therefore, I recommend that the Court grant the Motion to Vacate the Confessed Judgment on the basis of possible fraud, and grant the Motion to Dismiss under the common law doctrine of *forum non conveniens*, rather than relying on Defendant's alleged immunity under the FSIA to vacate the judgment and dismiss the case for lack of subject matter jurisdiction.

Defendant's second argument that subject matter jurisdiction is lacking[6] is that "Aeons has no standing to bring this suit."  Def.'s Mem. 21.  "Under Rule 12(b)(1), if a party lacks standing the court automatically lacks subject matter jurisdiction."  *Hufford v. Bank United, FSB*, No. RDB-11-1207, 2011 WL 4985920, at \*2 (D. Md. Oct. 18, 2011) (citing *Pitt County v. Hotels.com, L.P.*, 553 F.3d 308, 312 (4th Cir. 2009)).  Defendant alleges that Aeons "was involuntarily dissolved on October 14, 2008 by the Portuguese corporation registration authorities," and "a non-existent entity cannot sue."  Def.'s Mem. 21.  According to Defendant, Plaintiff's power to sue "passe[d] effectively into the hands of the corporation's directors who stand as trustees," who are unidentified and not involved in this lawsuit.  *Id.* at 3, 20–21.

Rule 17(b)(2) provides that "[c]apacity to sue or be sued is determined . . . for a corporation, by the law under which it was organized."  Fed. R. Civ. P. 17(b)(2); *see Cape v. von Maur*, 932 F. Supp. 124, 128 n.3 (D. Md. 1996).  The parties agree that Aeons was organized as a corporation under Portuguese law.  *See* Def.'s Mem. 1; Pl.'s Opp'n 1; Pina Aff. ¶ 2.  Although Plaintiff concedes that it is a dissolved corporation, it argues that the suit still is proper because "AEONS, notwithstanding administrative dissolution, has the power and authority to proceed with its collection and payment of debts."  Pl.'s Opp'n ¶ 21.  To support its assertion that Aeons retains that capacity to bring a lawsuit, Aeons submitted Mr. Pina's affidavit, in which he stated that AEONS "is a corporation organized and still existing under the laws of Portugal," and that its "Counsel advised that statutes and court cases established clearly that in Portugal a dissolved corporation continues as a juridical entity and can sue and be sued in its own right thereafter while it collects assets and resolves its debts."  Pina Aff. ¶¶ 2 & 4.  Mr. Pina attached a legal opinion from Aeons's counsel in Portugal.  Pina Aff. Ex. 1.  The opinion states:

---

[6] Defendant does not state whether Aeons's purported lack of standing is a grounds to vacate the Confessed Judgment or to dismiss the Complaint.

> [E]ven though the company AEONS has been administratively dissolved, the fact it holds patrimonial assets, of credits over its clients and also litigation rights (which amount is not yet determined but will be determined upon the outcome of the litigation) keeps intact its juridical personality and judiciary capacity. Article 9., no. 1 and no. 2 of the Code of Civil Procedure confers to Aeons the capacity to be by itself in court and fully exercise of its rights as a creditor. One can draw this same conclusion comes from the art. 5th, No. 1, of the Code of Civil Procedure. . .
>
> We can thus conclude that Aeons Centro de Administração de Empresas Limitada still has juridical personality and judiciary capacity and is entitled to be in court in its own name claiming credits it owns and that are due.

*Id.* at 2-3.  Without access to the Portuguese Code of Civil Procedure or the ability to subpoena Aeons's Portuguese counsel, *see* Fed. R. Civ. P. 45(c)(3)(A)(ii), the Court cannot verify the assertions by Aeons's counsel.  Once again, I recommend that the Court grant the Motion to Vacate the Confessed Judgment on the basis of possible fraud, and grant the Motion to Dismiss under the common law doctrine of *forum non conveniens*, rather than relying on Defendant's purported lack of standing to vacate the judgment and dismiss the case for lack of subject matter jurisdiction.

Finally, Defendant contends that this Court lacks personal jurisdiction because the documents supporting the Complaint, including the Payment Guarantee, are fraudulent, such that the forum selection clause in the Payment Guarantee is fraudulent as well, and CBN does not have minimum contacts with Maryland.  Def.'s Mem. 16–17.  It is true that Plaintiff has not met its burden of showing that Defendant has minimum contacts with Maryland.  *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993) ("When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence."); *Estes v. Midwest Prods., Inc.*, 24 F. Supp. 2d 621, 622 (S.D. W. Va. 1998) (same).  However, whether this Court has personal

jurisdiction by virtue of the forum selection clause in the Payment Guarantee cannot be decided without determining the validity of the Payment Guarantee through an evidentiary hearing. The distance the parties and witnesses would have to travel would be costly and burdensome, and the limitations on the Court's subpoena power, *see* Fed. R. Civ. P. 45(c)(3)(A)(ii), could be an issue once again. Therefore, I recommend that the Court grant the Motion to Vacate the Confessed Judgment on the basis of possible fraud, and grant the Motion to Dismiss under the common law doctrine of *forum non conveniens*, rather than relying on the Court's alleged lack of personal jurisdiction to vacate the judgment and dismiss the case.

## V.    CONCLUSION

In sum, I recommend that the Court

1. GRANT Defendant's Motion to Vacate Judgment by Confession on the basis that Defendant has presented evidence that, "if believed, . . . would permit either the Court or the jury to find for [Defendant]," *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982);

2. REOPEN this case; and

3. GRANT Defendant's Motion to Dismiss for *forum non conveniens*.

The parties have fourteen (14) days in which to file objections to this Report and Recommendation pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

A proposed Order follows.

Dated: <u>July 3, 2012</u>                                   <u>            /s/            </u>
                                                            Paul W. Grimm
                                                            United States Magistrate Judge

lyb

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **AEONS CENTRO DE**<br>    **ADMINISTRACAO DE**<br>    **EMPRESAS, LTD.,** | :<br><br>:<br><br> |
| **Plaintiff,** | :<br><br>**CIVIL NO.: BEL-11-3447**<br>:<br><br> |
| **v.** | :<br><br> |
| **CENTRAL BANK OF NIGERIA,** | :<br><br> |
| **Defendant.** | :<br>…o0o… |

## <u>ORDER</u>

For the reasons stated in the Report and Recommendation that United States Magistrate Judge Paul W. Grimm submitted on July 3, 2012, and the time for filing objections to the Report and Recommendation having passed, it is, this _____th day of _____, 2012, ORDERED that

1. Defendant's Motion to Vacate Judgment by Confession IS GRANTED;

2. This case IS REOPENED; and

3. Defendant's Motion to Dismiss IS GRANTED.

_____
Benson Everett Legg
United States District Judge